JOHN McLEAN, Appellant, v. TOM BOE.  L. R. BAIRD, as Receiver of the Towner County Bank of Perth, North Dakota, Respondent.

(227 N. W. 433.)

Opinion filed October 22, 1929.

*F. T. Cuthbert* and *C. E. Joseph,* for appellant.

*Traynor & Traynor,* for respondent.

CHRISTIANSON, J. This appeal involves six promissory notes, executed by one Boe to the Towner County Bank of Perth, which notes the plaintiff McLean claims that he purchased from such bank. McLean brought suit on the notes against the maker, and Baird, the receiver of the Towner County Bank of Perth, intervened, alleging that the plaintiff on or about October 21, 1925, through fraudulent connivance with one Rother, the then president and managing officer of the bank, "wrongfully and unlawfully obtained possession of said notes by a pretended book transaction whereby the said Rother attempted to give himself credit for salary amounting to $2,500 and to take out of the assets of said bank the said notes in payment of the said salary; that the said action upon the part of the said plaintiff and the said Rother was a deliberate fraud upon the stockholders, depositors and creditors of the said Towner County Bank of Perth and was done entirely without authority of the said bank, and was an ultra vires act on the part of said Rother president of the said bank" and that, consequently, the plaintiff is not the owner of the notes Boe, the maker, made no contest. He admits the indebtedness and the sole question involved is whether the plaintiff McLean or the intervenor Baird, as receiver, is entitled to judgment against Boe for the amount due on the notes. The case was tried to a jury and resulted in a verdict in favor of the receiver. The plaintiff McLean moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and he has appealed.

The following facts are clearly established by the evidence: The Towner County Bank of Perth was closed October 28, 1925. During a number of years preceding one Rother was the president and managing officer of the bank. The plaintiff McLean is his brother-in-law.

In the summer of 1925 the bank was in need of money to maintain the cash reserve required by law. The plaintiff, McLean, desiring to assist the bank, and especially his sister and brother-in-law, agreed with his brother-in-law, Rother, the president of the bank, that he (McLean) would furnish $1,000, upon the condition that McLean

should receive promissory notes from the assets of the bank of the face value of $1,000. On June 23, 1925, McLean sent his check for $1,000. The check was drawn against his account in a bank at Devils Lake; it was made payable to F. C. Rother but it was indorsed by Rother to the Towner County Bank of Perth, and this bank deposited the check with its correspondent, the First National Bank of Devils Lake and the check was duly paid on presentation. In accordance with the understanding between the plaintiff and Rother the plaintiff received four notes aggregating, without interest, $990. These notes were all from the assets of the Towner County Bank, were payable to that bank and indorsed by it by Rother as its president. Some time later one of these notes, the same being a note for $600, was paid, and the plaintiff transmitted the note to the bank, but the bank did not remit the money which had been collected, but in lieu thereof sent plaintiff two other promissory notes belonging to the bank. Some time later,—between the latter part of September and the middle part of October,—these notes were also paid and the plaintiff returned them to the bank, but the bank, instead of sending plaintiff the money which it had collected, sent him the notes in controversy here, the aggregate amount of which was slightly less than that of the other two notes which the bank had collected. The notes in suit all bear the following indorsement: "without recourse, Towner County Bank of Perth, by F. C. Rother, president." There was offered in evidence on behalf of the intervenor the testimony of one of the deputy examiners. He testified regarding an examination which he had made of the books of the bank some time after the bank had closed. The substance of his testimony is to the effect that on the 21st day of October, 1925, when the notes in suit were taken out of the assets of the Towner County Bank, a countercharge of $2,500 was made upon the books of the bank for salary of officers. And the examiner further testified that, according to the books of the bank the notes in suit were in effect taken out in payment of such charge for salary. Largely upon this testimony is based the claim of the intervenor that the notes in suit were withdrawn from the bank by Rother, the president, for his own individual benefit and that the plaintiff, McLean, acquired them under such circumstances as to charge him with notice of this fact. A careful consideration of all the evidence leads us to the conclusion that even if it be true, as

the deputy examiner stated, that the notes in suit were withdrawn by Rother in payment of salary, there is no evidence from which any inference reasonably may be drawn that the plaintiff, McLean, had any notice of this fact. The evidence shows that McLean advanced and paid over to Rother, the president of the bank, $1,000 in cash; that this money was advanced with the understanding that it was to aid the bank in maintaining an adequate cash reserve; that the check which the plaintiff gave was deposited to the credit of the bank with its correspondent at Devils Lake and was collected by such correspondent. The evidence further shows that McLean advanced the $1,000 with the specific understanding that he was to receive from the assets of the Towner County Bank promissory notes equivalent in amount to the money he advanced. In other words, the evidence clearly shows that there was an agreement that the plaintiff, McLean, should advance for the benefit of the bank $1,000 in cash and that in return for this he should receive from the bank's assets $1,000 in promissory notes. The evidence further shows that this arrangement was carried out; that McLean received such notes and that these notes were in turn collected by the bank but that McLean, instead of receiving the cash which the bank had collected, received and accepted other promissory notes belonging to and part of the assets of the bank. Considerable is made of the fact that the transactions were all carried on between McLean and Rother. It is difficult to understand how McLean or any other person could have had any transaction of consequence with the Towner County Bank unless the negotiations were had through Rother as an officer of the bank, for, according to the specific allegations of the complaint of the intervenor, *Rother was the president and managing officer of the bank.* Hence it was only natural that anyone having business transactions with the bank, such as McLean had, should have had his dealings with Rother. We have searched the record in vain for any evidence from which any inference may reasonably be drawn that McLean connived with Rother as asserted in the complaint in intervention, or that he had any knowledge or belief that he was receiving anything except that which he was lawfully entitled to receive from the bank, and we fail to find even a scintilla of evidence to justify any such inference. Upon the record it is entirely clear that McLean has received nothing for which the bank was not paid full and complete

consideration. Certainly a person who purchases securities from a bank is not an insurer that the officer of the bank with whom the transaction is had shall not misappropriate the funds which he receives for the bank. There is no question but Rother was duly authorized to represent the bank in transactions of this kind. He was the one officer with whom such transactions would naturally be had. We are all agreed that upon the record before us here there is no evidence whatsoever justifying the verdict and that the plaintiff, McLean, was entitled to a verdict and judgment as a matter of law.

It is claimed by the respondent, however, that plaintiff is not entitled to judgment notwithstanding the verdict for the reason that after the motion for a directed verdict was made and denied additional evidence was received. It is true a motion for judgment notwithstanding the verdict must be predicated upon a previous motion for a directed verdict. In this case there was a motion for a directed verdict at the close of all the testimony and there was no formal reopening of the case or introduction of further evidence; but during the argument of intervenor's counsel to the jury some reference having been made to a certain letter, counsel for the plaintiff stated that he would stipulate that the letter be offered and received and it was so admitted. In a memorandum decision the trial court gives the following version of the incident:

"The plaintiff contends that the defendant is not entitled to judgment notwithstanding the verdict on the grounds that a letter, exhibit 14, was introduced after the motions had been made. The circumstances thereof, as the court remembers them, are that during the opening argument of Mr. Traynor, counsel for Mr. Baird, he made some reference to the fact that Mr. Cuthbert, counsel for McLean, during the cross-examination of Mr. Bagne, a witness for Mr. Baird, had referred to a letter written by Baird, and cross-examined the witness upon that letter without introducing it in evidence, and I believe that Mr. Traynor somewhat twitted Mr. Cuthbert that he did not dare introduce it in evidence. Thereupon Mr. Cuthbert spoke up and accepted that challenge, saying that he would be willing that it be introduced. Then the following proceedings were had:

"Mr. Cuthbert: It is stipulated that Exhibit 14 is offered for the part that relates to the notes in question, being paragraph 2, commen-

cing with the words 'On October 17th' on the first page and ending with '1706.15' on the bottom of the page of page 2. By Mr. Traynor: No objection if it is all admitted. By Mr. Cuthbert: The jury will read it all if it is admitted. By the court: Let it be received. This court is of the opinion that this does not constitute such an introduction of testimony as would be a waiver of the motion for a directed verdict. No request was made to open the case and no ruling was made that the case be reopened. This letter was merely received in evidence upon the agreement of the parties; Mr. Cuthbert being willing that a certain portion of it be considered and Mr. Traynor insisting that it be all considered. This all occurred in the heat of argument between counsel. Immediately after the court said that the said letter would be received Mr. Traynor proceeded with his argument. It seems to the court, that while the law cited by Mr. Baird's counsel is good law, yet to apply it to a case like this would be quite technical and not in the interest of justice."

We agree with the observations of the trial court. It is clear that neither of the parties considered that the case was reopened. The letter in question was not of any controlling evidentiary effect. It was actually admitted as a part of the argument. That was the theory of the parties at the time and the theory of the trial court and hence, under well-settled rules, should be and must be adopted as the theory on appeal. If the letter constituted evidence of such facts that if it had been admitted before the motion for a directed verdict was made it would have shown that plaintiff was not entitled to judgment on the merits as a matter of law, then, of course, a judgment notwithstanding the verdict should not be granted; for it is only when it appears clearly upon the whole record that the moving party is entitled to a judgment on the merits as a matter of law that judgment notwithstanding the verdict ought to be ordered. First State Bank v. Kelly, 30 N. D. 84, 98, 152 N. W. 125, Ann. Cas. 1917D, 1044. But no such condition exists in this case, for even though the letter be considered as evidence duly offered and received and full effect given to every recital in it, it does not affect the right of the plaintiff to recover in this case as a matter of law. When all the evidence in the case is considered, including the letter in question, it is clear beyond all controversy that plaintiff is entitled to recover and that the intervenor can

in no event establish any right of recovery; consequently it would be an idle ceremony to order a new trial of the action. In short, the case is one where the plaintiff is entitled to judgment upon the merits as a matter of law. This being so he is also entitled to judgment notwithstanding the verdict. Ibid.

The judgment and the order appealed from are reversed and the case is remanded with directions that judgment be entered in favor of the plaintiff.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.